# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| JESUS PEREZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CRST INTERNATIONAL, INC; CRST EXPEDITED, INC; DOES 1-100, *inclusive*,<br><br>　　　　Defendants. | No. 18-CV-23-CJW-KEM<br><br>**ORDER** |

This matter is before the Court on cross motions for a determination of the applicable body of law. (Docs. 69, 70). The parties timely filed resistances to the opposing party's motion. (Docs. 73, 74; *see also* Doc. 67 (setting scheduling order deadlines, including the deadlines for briefing the choice of law issues)). For the following reasons, the Court finds that Iowa law is to govern this case.

## I.　　PROCEDURAL AND FACTUAL BACKGROUND

Defendant CRST Expedited is a trucking company based out of Cedar Rapids, Iowa, and defendant CRST International is an affiliated company.[1] (Doc. 70-1, at 8). Plaintiff formerly worked as part of a two-person, long-haul truck driving team for defendants, first as an "employee," then later as an "independent contractor." (Doc. 75, at 3, 8-9). Although plaintiff signed an independent contractor agreement with defendants, plaintiff now argues that he was misclassified as an independent contractor

---

[1] Defendants assert that CRST International "is not a party to the relevant contract and has no relationship with [p]laintiff." (Doc. 70-2, at 3). For ease of reference only, the Court will refer to "defendants," in the plural, throughout this Order.

and, instead, should have been classified as an employee. (Doc. 75, at 12-13). The independent contractor agreement that plaintiff signed included both a forum selection clause and a choice of law provision. (Doc. 70-2, at 30).

The operative complaint in this case was initially filed in the Superior Court of California, and plaintiff brought ten claims "on behalf of himself, all others similarly situated, and the general public."[2] (Doc. 75, at 2). All of the claims are based on California law: 1) misclassification of employee as independent contractor, CAL. LAB. CODE § 226.8; 2) failure to pay meal and rest period compensation, CAL. LAB. CODE §§ 226.7, 512; 3) failure to pay compensation for all hours worked and minimum wage violations, CAL. LAB. CODE §§ 216, 1194, 1194.2, 1197; 4) failure to provide accurate itemized statements, CAL. LAB. CODE §§ 226, 226.2; 5) waiting time penalties, CAL. LAB. CODE, § 203; 6) failure to pay all wages by the appropriate pay period, CAL. LAB. CODE § 204; 7) failure to reimburse business expenses, CAL. LAB. CODE § 2802; 8) failure to pay minimum wage and rest and recovery period compensation separate from any piece-rate compensation, CAL. LAB. CODE § 226.2; 9) Private Attorneys General Act, CAL. LAB. CODE §§ 2698, *et. seq.*; and 10) unfair business practices, CAL. BUS. & PROF. CODE §§ 17200, *et. seq.* (*See* Doc. 75).

Defendants removed this case to the United States District Court for the Central District of California and asserted diversity jurisdiction as the basis for the federal court's jurisdiction. (Doc. 1). Defendants subsequently filed a motion to transfer venue. (Doc. 31). The Central District of California found that the forum selection clause contained in the independent contractor agreement was valid and enforceable and, based on the forum selection clause, transferred the case to this Court. (Doc. 35).

---

[2] Although plaintiff seeks to pursue this case as a class action, the class has yet to be certified.

The parties agree that this case presents the potential for a conflict of laws issue. Specifically, plaintiff contends that California law governs, and defendants contend that Iowa law governs. Plaintiff asserts that the parties are in agreement that the choice of law clause in the independent contractor agreement is inapplicable to this case (Doc. 69, at 11 n.1), and defendants do not argue for application of the choice of law provision (*see* Doc. 70-1, at 17 (arguing that the choice of law provision indicates that the parties expected Iowa law to govern disputes regarding the parties' contractual relationship, but not arguing for strict application of the choice of law provision)). At the parties' request, the Court set a briefing schedule for the parties to follow in briefing the conflict of laws issue. (Doc. 67). The parties timely filed their briefs in accordance with that schedule.

## II.    APPLICABLE LAW

To determine which body of law applies to a dispute, a court must apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). This holds true even when, pursuant to a valid forum selection clause, a case is transferred to a district other than the one in which it was originally filed. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 64-66 (2013). When confronted with a potential conflict of laws issue, the first step is to determine whether there is a "true conflict" between the different bodies of law that could govern. *Phillips v. Marist Soc'y of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996). If there is no difference in the relevant laws of the different states, the conflict is a false conflict that need not be resolved. *Baron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992); *see also Leonards v. S. Farm Bureau Cas. Ins. Co.*, 279 F.3d 611, 612 (8th Cir. 2002) (declining to resolve a conflict of laws issue where the conflict was a "false conflict").

In tort cases, Iowa applies the *Restatement (Second) Conflict of Laws*' "most significant relationship" test in considering conflict of laws issues. *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). The *Restatement* provides as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (AM. LAW. INST. 2018). Section 6 of the *Restatement*, as referred to in Section 145, reads as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectations,
>     (e) the basic policies underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

## III. DISCUSSION

### A. *Ripeness*

In plaintiff's opening brief, plaintiff asserts "that it is too early to determine the precise conduct [that] is subject to California law." (Doc. 69, at 9). Plaintiff asserts that "the Court should merely decide whether California's laws generally apply to California residents for work performed in California or conduct giving rise to liability [that] occurred in California . . . ." (*Id.*). Aside from stating that discovery is ongoing, plaintiff does not explain why he thinks the conflict of laws issue is not ripe, and plaintiff cites no authority in support of his position. The Court declines to accept plaintiff's invitation to determine "whether California's laws generally apply to California residents for work performed in California or conduct giving rise to liability [that] occurred in California." (*Id.*). The question plaintiff posits is not the inquiry the Court must confront in assessing which body of law applies to this case. The simplified issue plaintiff presents does not take into consideration all that the law requires, and to answer only the question plaintiff offers would require the Court to adopt an alternative standard to deciding conflict of laws issues. The Court will not, therefore, address the conflict of laws issue in the manner plaintiff requests.

Further, the Court finds that the controversy regarding the applicable body of law is ripe for judicial review. The doctrine of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation and internal quotation marks omitted). "Ripeness requir[es] [a court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (first alteration in original) (citation and internal quotation marks omitted).

The issue of which body of law governs this case is not an abstract issue. The issue exists at this time, and the Court's decision as to which body of law governs will dictate how this case proceeds. If Iowa law governs, this case could take a drastic turn because the complaint, as currently framed, bases each claim on *California statutory law*. Were the Court to postpone deciding which body of law applies, the parties could proceed through the entirety of discovery before submitting their dispositive motions and, in support of those motions, arguments as to which body of law governs. If, at that late stage, Iowa law were found to govern, the parties would have wasted considerable resources in pursuing a case that lacked a solid legal foundation from its inception. Although discovery could yield some small amount of information that could benefit the Court in its conflict of laws analysis, the Court has adequate information before it at the present time to enable it to make a sound determination as to the applicable body of law.

Notably, plaintiff has not argued that the Court is without the information necessary to enable the Court to reach a sound conclusion. Plaintiff has only stated that "[d]iscovery is ongoing." (Doc. 69, at 9). This factual statement does not aid the Court in ascertaining the basis for plaintiff's argument that the controversy is not ripe for review. In considering the dictates of the ripeness doctrine, the Court is satisfied that the conflict of laws issue presented in the instant case is ripe for review.

### B. *True Conflict*

The Court finds that there is a true conflict between California law and Iowa law with respect to each of the claims asserted in this case. Nine of plaintiff's ten claims rest on plaintiff having allegedly been improperly classified as an independent contractor instead of as an employee. Plaintiff brought the tenth claim under California's Private Attorneys General Act. (Doc. 75, at 21-22). Iowa has no law that is analogous to California's Private Attorneys General Act. As Iowa does not have a law analogous to

6

California's Private Attorneys General Act, there is a true conflict as to plaintiff's Private Attorneys General Act claim.

As to the remaining nine claims, the Court finds that a true conflict exists because Iowa categorizes workers as "employees" using different criteria than does California. Importantly, the nine claims at issue (Counts One through Eight and Ten) have all been brought under statutes that apply only to "employees," or have been pled as applying only to "employees." (*See generally* Doc. 75; *see also Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327, 335-36 (Cal. Ct. App. 2007) (recognizing the applicability of the employee/independent contractor distinction in the context of claims brought under the California Labor Code)). As a result, the employee/independent contractor distinction forms the basis for each of the nine claims at issue.

Under Iowa law, in determining whether an individual is an employee or an independent contractor, "the primary focus is on the extent of control by the employer over the details of the alleged employee's work."[3] *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997). In assessing the extent of control, Iowa courts consider the following factors:[4] 1) who had the right to control the physical conduct of the work;

---

[3] The Court notes that the term "employer" carries a different meaning under Iowa law than it does under California law.

[4] Although defendants assert that Iowa courts employ "a multi-factor economic realities test to determine employee status for minimum wage claims," (Doc. 70-1, at 11), the Court recognizes that there is an issue as to whether Iowa courts apply the economic realities test outside of the civil rights context. *See Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 20 (Iowa 2010). *See also Goodpaster v. Schwan's Home Servs., Inc.*, 849 N.W.2d 1, 17 (Iowa 2014) (explaining that the economic realities test considers whether an employer should be required to accommodate an employee's disability in light of the employee's needs and the economic realities faced by the employer in providing the accommodation). The Court need not reach either the applicability of the economic realities test or the merits of the economic realities test because the Court is able to determine—without considering the economic realities test—that there is a true conflict between Iowa law and California law.

2) whether the purported employee was on the employer's payroll; 3) who provided the equipment to accomplish the work; 4) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; 5) the independent nature of the worker's business or of his distinct calling; 6) the worker's employment of assistants, with the right to supervise their activities; 7) the worker's obligation to furnish necessary tools, supplies, and materials; 8) the worker's right to control the progress of the work, except as to final results; 9) the time for which the workman is employed; 10) the method of payment, whether by time or by job; 11) whether the work is part of the regular business of the employer; and 12) the parties' intention as it reflected upon the employment relationship. *Id.* at 542-43.

In contrast, when assessing whether an individual is an employee or an independent contractor, California courts consider, in essence, "whether the principal has the right to control the manner and means by which the worker accomplishes the work." *Estrada*, 64 Cal. Rptr. 3d at 335. Included in this consideration are the factors of: 1) whether the worker is engaged in a distinct occupation or business; 2) whether, considering the kind of occupation and locality, the work is usually done under the principal's direction or by a specialist without supervision; 3) the skill required; 4) whether the principal or worker supplies the instrumentalities, tools, and place of work; 5) the length of time for which the services are to be performed; 6) the method of payment, whether by time or by job; 7) whether the work is part of the principal's regular business; and 8) whether the parties believe they are creating an employer-employee relationship. *Id.* (citations omitted).

At this stage, the Court need not determine whether plaintiff was an employee as opposed to an independent contractor. Instead, the Court need only address whether the Court's analysis as to the employee/independent contractor issue would proceed in the same fashion under both Iowa law and California law. Although there is a significant

degree of overlap between the tests employed by Iowa and California, the tests are not identical. For example, Iowa law, unlike California law, takes into consideration, *inter alia*, whether the worker was on the employer's payroll, the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price, and the worker's employment of assistants, with the right to supervise their activities. *Compare Iowa Mut. Ins. Co.*, 572 N.W.2d at 542-43 *with Estrada*, 64 Cal. Rptr. 3d at 335. California law, on the other hand, considers the skill required, which is not a factor considered under Iowa law. *See Estrada*, 64 Cal. Rptr. 3d at 335.

These differences would necessarily factor into the Court's consideration of the employee/independent contractor distinction, which is central to the nine claims implicated by the issue. As the Court's analysis would proceed differently under each body of law, the Court finds that the conflict of laws issues presented in the instant case are true conflicts and that the Court should, therefore, proceed to a determination of which body of law applies.

### C.     *Conflict of Laws Analysis*

Although plaintiff signed a contract with defendants, plaintiff's claims in this case do not stem from that contract. Instead, each of plaintiff's claims finds its basis in California labor or employment law, not contract law. As such, plaintiff's claims can more properly be considered tort claims. Further, this case was transferred from a federal court in California to this Court based on a valid forum selection clause.[5] (Doc. 35).

---

[5] The Court's conclusion that plaintiff's claims sound in tort law as opposed to contract law is not at odds with the Central District of California's finding in this same case that the parties entered into a valid forum selection clause. (*See* Doc. 35, at 3-7). The forum selection clause in the independent contractor agreement applies to "any claim or dispute arising from or *in connection with* [the independent contractor] agreement." (Doc. 70-2, at 30 (emphasis added)). The choice of law provision, on the other hand, only applies to the independent contractor agreement. (*See id.* ("This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, except as otherwise provided herein, of the State of Iowa,

*See Atl. Marine Constr. Co.*, 571 U.S. at 64-66 (holding that in a case that has been transferred to a different federal district court based on a valid forum selection clause, a court must apply the conflict of laws rules of the state in which it sits). The Court will therefore rely on the Iowa conflict of laws rules for tort cases in analyzing the applicable body of law.

Each of plaintiff's claims arises from the same core set of facts—plaintiff's allegation that he was not afforded proper compensation under California's labor and employment laws during his tenure with defendants. Although the Court recognizes that plaintiff alleges a different statutory basis for each of his claims, the Court need not apply the conflict of laws factors to each claim individually. Instead, the Court may apply the relevant factors to the core set of facts as a whole. The Court may do so because the Court's analysis would be largely identical with respect to each of plaintiff's ten claims.

The Court will consider each relevant factor in turn: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, place of incorporation, and place of business of the parties; 4) the place where the parties' relationship is centered; 5) the needs of the interstate and international systems; 6) the relevant policies of the forum; 7) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; 8) the protection of justified expectations; 9) the basic policies underlying the field of law; 10) certainty, predictability, and uniformity of result; and 11) ease in the

---

without regard to the choice-of-law rules of such State or any other jurisdiction.")). Plaintiff's alleged misclassification as an independent contractor arose *in connection with* the independent contractor agreement, and claims arising from that alleged misclassification may consequently be subject to the forum selection clause. The choice of law provision, however, is more narrow and applies only to claims brought *under* the independent contractor agreement. As set forth *supra*, plaintiff has not alleged any violations of the independent contractor agreement. Plaintiff's tort claims may, therefore, be subject to the forum selection clause without being subject to the choice of law provision.

determination and application of the law to be applied. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145.

### 1. *Place of Injury*

The alleged injuries at issue occurred strictly in California. Although plaintiff drove for defendants throughout the continental United States, plaintiff seeks relief under California law only for those alleged violations that occurred in California. (Doc. 69, at 16 ("Plaintiff is seeking redress for violations of *California Labor Laws* [that] can be found to have occurred *in California* involving *drivers employed in California*. . . . [T]he 'injuries' to Plaintiff and the class occurred in California." (emphasis in original))). As such, the first factor weighs in favor of applying California law.

### 2. *Place of Conduct Causing Injury*

Any conduct that may have caused plaintiff's alleged injuries would have occurred in Iowa. The Court reiterates that each cause of action plaintiff sets forth stems from plaintiff's allegation that he was misclassified as an independent contractor instead of an employee. (*See* Doc. 75; *see also* Doc. 71, at 2 ("The gist of Plaintiff's complaint [is] that Plaintiff was misclassified as being an independent contractor when driving as a truck driver for Defendants.")). The decision to classify plaintiff as an independent contractor, being an employment and/or legal decision, would have been made at defendant's corporate headquarters in Iowa. (Doc. 70-2, at 3-4; *see also* Doc. 70-1, at 16).

Plaintiff further alleges that following his termination, plaintiff was not timely paid all wages to which plaintiff was entitled. (Doc. 75, at 17). Any conduct that may have led to plaintiff not timely being paid would have occurred in Iowa. (Doc. 70-2, at 4). Indeed, plaintiff agrees that his settlement checks following his termination were processed out of defendant's office in Cedar Rapids, Iowa. (Doc. 70-3, at 21). It appears to the Court that if defendants did act wrongfully, defendants did so in Iowa. Perhaps those actions affected plaintiff in other parts of the country, including California, but the

evidence before the Court does not support a finding that defendants committed any allegedly wrongful acts in a state other than Iowa. As such, this factor weighs in favor of applying Iowa law.

### 3. *Domicile, Residence, Place of Incorporation, and Place of Business*

The third factor—domicile, residence, place of incorporation, and place of business of the parties—is in equipoise. Plaintiff is a resident of California (Doc. 75, at 4), and defendants are incorporated in Iowa, where defendants have their principal places of business (Doc. 70-2, at 3). All parties operate throughout the country. Plaintiff, in driving for defendants, drove throughout the continental United States. (Doc. 70-3, at 18-19). Defendants, although headquartered in Iowa, contract with drivers throughout the country and dispatch drivers throughout the continental United States. (Doc. 70-2, at 4). Neither Iowa nor California has more substantial ties to this case than the other state by virtue of the parties' domiciles or business dealings. Consideration of this factor does not tip the scale in favor of either party because Iowa is home to defendants, while California is home to plaintiff, and all parties operate throughout the country.

### 4. *Place in Which Parties' Relationship was Centered*

The fourth factor—the place in which the parties' relationship was centered—weighs in favor of Iowa law governing. The transient nature of a truck driver makes it difficult to ascertain where the parties' relationship was "centered" because the parties communicated regarding different business dealings regardless of plaintiff's physical location in the United States. Plaintiff contends that the parties' relationship was centered in California because plaintiff was based out of California, was initially hired as an employee-driver in California, and because plaintiff "signed the majority of the independent contractor agreements and lease agreements in California." (Doc. 69, at 17). Defendants refute these assertions by pointing out that of the three independent contractor agreements plaintiff signed, only one was signed in California, one was signed

in Iowa, and one was signed elsewhere in the United States while plaintiff was on the job.[6] (Doc. 74, at 10, 13).

In reviewing plaintiff's sworn declaration, the Court finds that defendants have correctly determined that plaintiff signed at least two of his independent contractor agreements outside of California, and that one was signed in Iowa. (*See* Doc. 71-1, at 3). It would appear that plaintiff also signed a number of lease agreements, which permitted plaintiff to lease trucks so that plaintiff could perform his duties as a truck driver.[7] (*See id.*, at 3-4). The parties' pleadings leave a number of ambiguities as to how many lease agreements plaintiff signed and where plaintiff was physically located when he signed those agreements. For purposes of the present motions, however, the Court will assume that plaintiff was physically located in California when he signed each of the lease agreements. This assumption tips the scale slightly in favor of the fourth factor weighing in favor of applying California law.

Defendants further argue that plaintiff having been based out of California "was of little import to the parties' relationship." (Doc. 74, at 13). Defendants could be correct that it made no difference to defendants whether plaintiff was based out of California or a different state. The importance defendants place on that fact, however, is not probative on the issue of where the parties' relationship was centered. The relevant fact is that plaintiff was based out of California, which means that the parties engaged in

---

[6] The third "independent contractor agreement" that plaintiff signed while on the road appears to be an addendum to the prior independent contractor agreement, as opposed to an entirely separate independent contractor agreement. (Docs. 71-1, at 3-4, 86).

[7] Although defendants assert that they were not parties to the lease agreements and that the Court should therefore decline to consider the lease agreements in determining the center of the parties' relationship, the Court need not reach this issue. (Doc. 74, at 10). The Court is able to conclude that Iowa was the center of the parties' relationship even without discounting the importance to be given to the lease agreements.

13

certain transactions in California. As a result of those transactions, plaintiff being based out of California tips the scale, as to this factor, in favor of applying California law.

The Court does not agree with plaintiff, however, that plaintiff having initially been hired as an employee-driver while present in California tips the scale in favor of applying California law. Plaintiff was hired as an employee-driver in 1995, plaintiff's status changed to an independent contractor in 2004,[8] and plaintiff was terminated in 2016. (Docs. 70-1, at 9; 75, at 8). Even assuming, *in arguendo*, that plaintiff was hired as an employee-driver while plaintiff was physically located in California, and even assuming that the parties' relationship was centered in California at the time plaintiff first became an employee-driver, the Court finds that the parties' relationship evolved over the course of the next twenty years such that the center of the parties' relationship changed to Iowa.

Roughly ten years after plaintiff was first hired as an employee-driver, plaintiff became an independent contractor driving for defendant. In becoming an independent contractor, plaintiff signed his contract in Iowa and attended a five-day orientation in Iowa. (Doc. 70-3, at 9). Although signing the independent contractor agreement in Iowa would tip the scale in favor of finding that the parties' relationship was centered in Iowa, plaintiff signed a subsequent independent contractor agreement in California, which serves to balance the scale. (Doc. 71-1, at 3). Moreover, plaintiff's final independent contractor agreement was signed in a third state, and the parties seem to lack knowledge of which state plaintiff was physically located in when he signed the contract. (*See id.*, at 3-4; Doc. 74, at 13 (acknowledging plaintiff's assertion that he signed the contract

---

[8] The year in which plaintiff signed his first independent contractor agreement is unclear. Plaintiff contends that he became an independent contractor in 2004, and defendants contend that plaintiff became an independent contractor in 2007. (Docs. 70-1, at 9; 75, at 8). The year in which plaintiff signed the first independent contractor agreement is immaterial to the Court's present considerations, and the Court need not resolve the dispute at this time.

"somewhere on the East Coast," but declining to identify plaintiff's specific location when signing the contract)).

Plaintiff having signed the three contracts in three different states indicates that plaintiff's location when signing was of no importance to the parties, which, in turn, tends to show that plaintiff's location when signing is not important in determining where the parties' relationship was centered. Further, if the parties were concerned with plaintiff's physical location when signing the contracts, the parties would have identified and recorded plaintiff's location when signing the third contract. The fact that the parties did not do so indicates that the parties did not consider plaintiff's physical location when signing the contracts to have any bearing on the parties' relationship. As such, the Court finds that plaintiff's physical location when signing each of the three contracts does not shed light on where the parties' relationship was centered.

Plaintiff's attendance at a five-day orientation in Cedar Rapids, Iowa does, however, aid the Court in determining the center of the parties' relationship. First, the fact that the orientation was held in Iowa is a strong indicator that the parties' relationship was centered in Iowa. Plaintiff's attendance at the orientation, which was presumably mandatory, shows that plaintiff recognized that defendants had *some* ties to Iowa—even if plaintiff was unaware of the extent of those ties—and that plaintiff was willing to travel to defendants in order to attend orientation. Plaintiff travelling to Iowa to complete his orientation shows that the parties, together, had a significant connection to Iowa. Further, plaintiff spent five days at the orientation, the entirety of which was conducted in Iowa. (*See* Doc. 70-3, at 9). This is a significant amount of time to spend in one place, especially for a truck driver, whose professional success depends on him or her being transient. As such, the duration of the orientation is an additional strong indictor that the parties' relationship was centered in Iowa.

In weighing each of the considerations bearing on which state was the center of the parties' relationship, the Court concludes that Iowa was the center of the parties' relationship. Although the parties' relationship may have begun in California, the parties' subsequent actions show that Iowa became the center of the parties' relationship, as that relationship progressed. In reaching this conclusion, the Court finds it unnecessary to consider whether defendants' corporate actions and dispatch instructions, both of which were transmitted out of defendants' corporate headquarters in Iowa, have any bearing on the center of the parties' relationship. (*See* Doc. 70-2, at 3-4). The Court finds as such because defendants' choice to operate out of Iowa is probative more on defendants' center of business than it is on the parties' relationship. Although communicating with an entity that is based in a certain location could indicate that the parties' relationship is centered in that location, the facts in the instant case are not so indicative. The highly transient nature of truck drivers causes the Court to question whether the non-transient nature of the trucking companies is a fair indicator of the center of the parties' relationship. The Court is able to reach a conclusion as to the center of the parties' relationship without answering that question, and the Court will therefore decline to do so.

Finally, the Court finds that this factor weighs more heavily on the Court's consideration of the applicable body of law than do the other factors. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (providing that the Section 145 factors "are to be evaluated according to their relative importance with respect to the particular issue"). In centering their relationship in Iowa, the parties created more substantial ties between their relationship and Iowa than they created with any other state. The transient nature of the parties' relationship increases the significance of those ties because the parties could have conducted business without creating ties to any state. The parties' affirmative decision to do so, however, leads the Court to find that this factor weighs more heavily on the Court's consideration than the other factors.

### 5. *Needs of Interstate and International Systems*

"Respect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a substantial connection with the issue." *Veasley*, 553 N.W.2d at 899 (citation and internal quotation marks omitted). The primary issue presented in this case is whether defendants misclassified plaintiff as an independent contractor instead of as an employee. Defendants are both headquartered in Iowa, and all decisions regarding such classifications are made in Iowa. (Doc. 70-2, at 3-4). As such, Iowa has a substantial connection with the issue of misclassification. This factor weighs only slightly in favor of applying Iowa law, however, because California also has a connection with the issue of misclassification based on defendants conducting business in California. The states' dual connections are resolved in favor of applying Iowa law. Although defendants do business in both states, defendants are headquartered in Iowa, as opposed to California, which gives Iowa a greater connection to the issue. The Court therefore concludes that this factor weighs slightly in favor of applying Iowa law.

### 6. *Relevant Policies of the Forum and Relevant Policies and Interests of Other States*

When considering the policies of the forum state and the relevant policies and interests of other states, the two factors result in a balanced scale. Although Iowa has an interest in ensuring that businesses headquartered and incorporated in Iowa abide by all applicable labor and employment laws, California has an interest in enforcing its own labor and employment laws for its citizens. When considered against each other, California's interest in enforcing its own laws is of equal significance and importance as Iowa's interest in ensuring that businesses based out of Iowa abide by the law. The Court therefore concludes that when considered together, these two factors are in equipoise.

### 7. *Ease in Determination and Application of the Law to be Applied*

This Court frequently applies Iowa law and would be able to do so again in the instant case. Defendants urge that "[d]etermining when California law would apply and

how it would apply here will be complex." (Doc. 74, at 17 (citation omitted)). Plaintiff acknowledges that California law is "unique" in some material respects but asserts that this Court would be able to interpret and apply California law. (Doc. 69, at 19). The Court agrees with plaintiff. The relevant California laws are different from those laws this Court is most frequently called upon to employ, but the laws at issue are not so novel or complex that this Court would not be able to apply the laws accurately. As such, although the Court may be required to give additional consideration to California laws, should they be found to govern, the Court would be able to interpret and apply both Iowa law and California law with equal accuracy. This factor does not tip the scale in favor of either body of law.

### 8. *Protection of Justified Expectations; Certainty, Predictability, and Uniformity of Result; and Basic Policies Underlying Field of Law*

The parties' arguments as to the remaining factors are unpersuasive, and the Court finds that the remaining factors have no bearing on the Court's consideration of which body of law to apply. As to the protection of justified expectations factor, plaintiff merely states "an Iowa company doing regular business in California should not be surprised that California labor laws would apply to California employees performing work in California." (Doc. 69, at 19-20). Plaintiff cites no support for this conclusory statement, and the Court is unpersuaded by plaintiff's rationale. Defendants assert that "the parties' justified expectations are best protected through application of the law where [defendants are] located and where the parties agreed all claims would be litigated—Iowa." (Doc. 74, at 16). Defendants cite no law for the proposition that the parties' justified expectations would be best served through application of Iowa law, and the Court is unpersuaded by defendants' position. Further, defendants' argument that the parties agreed to litigate all claims in Iowa is based on the instant case having sounded from contract law. The Court has already found that this case sounds in tort, that plaintiff's claims do not stem from the independent contractor agreement, and that plaintiff's claims

are not subject to the choice of law provision contained therein. The Court therefore rejects defendants' argument that the parties' justified expectations would be served by application of Iowa law.

In support of defendants' argument that applying Iowa law would best promote certainty, predictability, and uniformity of result, defendants again argue that the Court should uphold the choice of law provision in the independent contractor agreement so that defendants will be able to predict which body of law applies to disputes involving its independent contractors. (Doc. 74, at 17). The Court rejects this argument on the basis that the choice of law provision in the independent contractor agreement does not apply to the claims plaintiff has brought. Plaintiff asserts that the certainty, predictability, and uniformity of result factor is not "a realistic concern." (Doc. 69, at 20). Without reaching the merits of plaintiff's assertion, the Court finds that this factor has no bearing on the Court's analysis. Defendants have not persuasively argued that this factor supports application of Iowa law, and plaintiff has offered no argument that this factor supports California law. In the absence of the parties offering legal theories regarding this factor, the Court finds that this factor carries no weight.

With respect to the basic principles underlying the relevant area of law, plaintiff rests on his arguments regarding the other factors. (*See id.*). To the best of the Court's understanding, plaintiff's intent is to point the Court toward plaintiff's argument that California has a strong interest in ensuring that companies doing business in California comply with California labor and employment laws. Although this argument is meritorious, it is not applicable to the basic principles underlying tort law. Defendants have offered no argument regarding this factor. The Court is satisfied that this factor is of marginal applicability, if any, in this case, and that this factor does not weigh in favor of either body of law.

### *9.      Consideration of All Factors Together*

The final step in the Court's analysis is to weigh the factors against each other to determine which body of law should be applied. The Court has found that many of the factors are either in equipoise or have no bearing on the Court's analysis. Of those factors that remain, only the place of injury favors applying California law. The place of conduct causing injury, the place in which the parties' relationship was centered, and the needs of interstate and international systems all weigh in favor of applying Iowa law. Further, the factors in favor of applying Iowa law weigh much more heavily in favor of applying Iowa law than the place of injury weighs in favor of applying California law. The Court again reiterates that the place in which the parties' relationship was centered carries more weight than the other factors and, as a result, this factor tips the scale significantly in favor of applying Iowa law. Based on these considerations, the Court finds that Iowa law is to govern this case.

The remaining arguments the parties have brought would be applicable only if the Court had found that California law governs. Because the Court has concluded that Iowa law governs, the Court need not address the parties' remaining arguments.

### IV.      CONCLUSION

For the aforementioned reasons, the Court finds that Iowa law is to govern this case.

**IT IS SO ORDERED** this 20th day of December, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa